*110 UPON A REHEARING EN BANC
FELTON, Chief Judge.
David L. Foltz, Jr. (“appellant”) was convicted by a jury of abduction with intent to defile pursuant to Code § 18.2-48 and was sentenced to life imprisonment. Before a panel of this Court, appellant contended that the trial court erred by denying his motion to suppress eyewitness testimony of police officers who observed him sexually assault a victim while she walked on a public sidewalk. Specifically, he asserts that evidence was inadmissible because it was obtained as a result of police officers’ use of a global positioning system (“GPS”) that they placed on his employer’s work van to track his movement, without first obtaining a search warrant, in violation of the Fourth Amendment of the United States Constitution and Article I, Section 10, of the Virginia Constitution. In a published opinion, the panel affirmed appellant’s conviction. See Foltz v. Commonwealth, 57 Va.App. 68, 698 S.E.2d 281 (2010). Pursuant to Code § 17.1-402(D)(ii), we ordered rehearing en banc and stayed the mandate of the panel decision. See Foltz v. Commonwealth, 57 Va.App. 163, 699 S.E.2d 522 (2010).
On rehearing en banc, we conclude that the trial court did not err in denying appellant’s motion to suppress the eyewitness testimony of the police officers who observed him sexually assault the victim. Accordingly, we affirm appellant’s conviction.

I. BACKGROUND

On appeal,
“[w]e consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial. We apply the same standard when, as here, we review the trial court’s denial of the defendant’s motion to suppress the evidence.”
*111 Perry v. Commonwealth, 280 Va. 572, 578, 701 S.E.2d 431, 435 (2010) (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000) (citations omitted)).
At the time of his arrest, appellant was a registered sex offender on probation as a result of prior convictions, including rape. Appellant worked for a food services company (“employer”). Employer provided him with a company van to use for work-related purposes in May 2007. Employer limited appellant’s use of the assigned van to drive to his home, to the company headquarters, to off-site workplaces and, by special permission, to probation-related appointments after work hours.
A series of sexual assaults bearing similar characteristics occurred in the Northern Virginia region beginning in November 2007. After hearing news reports related to those assaults, retired Fairfax County Police Detective J. Kraut determined that the recent assaults were “amazingly like” the unique modus operandi used in offenses he had investigated in the late 1980s, although he could not recall the name of the individual who was investigated in the earlier offenses.
In January 2008, Kraut contacted Lieutenant Akre of the Fairfax County Police Department’s sex crimes unit and told her about his investigation of the earlier offenses.[1] At the time Kraut contacted her, Lt. Akre already had identified appellant as a suspect in the recent sexual assaults.[2]
The investigating officers obtained appellant’s work schedule and his schedule for probation-related meetings. They compared those schedules with the times and locations of the recent sexual assaults. The officers determined that the recent assaults occurred in the general area where appellant worked *112 and attended meetings and that the times and locations of those assaults were consistent with his presence for work and meetings in the same areas. From the information that they had collected, the officers focused on appellant as a strong suspect in the recent assaults.
Thereafter, on February 1, 2008, the officers attached a GPS system to the bumper of appellant’s assigned work van while it was parked on the public street in front of his residence. They did not obtain a search warrant prior to doing so nor did they obtain employer’s permission. The officers first examined data from the GPS tracking system on the afternoon of February 5, 2008, four days after they placed the device on the van. From that data, they observed that the van had been driven in and out of various neighborhoods where the recent sexual assaults had occurred. The pattern of the van’s movements concerned the officers, who characterized the pattern as “hunting” behavior.
On the evening of that same day, February 5, 2008, another sexual assault occurred in the region. The investigating officers checked the GPS log and discovered that appellant’s assigned work van was parked about a block or two away from the scene of that assault at the time it occurred. With that additional information, the officers determined it was critical to personally follow appellant as he moved around.
On the following day, officers visually followed appellant as he drove his personal truck.[3] They observed him park his truck, get out, and put on a jacket and gloves. Two police officers then followed appellant on foot. They observed him, with “something up over his face,” run after a woman who was walking down a public sidewalk. The officers testified that they saw appellant grab the woman from behind and knock her to the ground. They then saw appellant pull his victim under a tree, pin her down, and try to unbutton her pants. *113 The officers quickly intervened, stopped the assault, and apprehended appellant.
Prior to trial, appellant moved to suppress all evidence collected by the police flowing from their use of the GPS device to track the movement of his assigned work van. He argued that the police were required to obtain a search warrant prior to attaching the GPS device to the van, and to use that device to track his movements. He contended that the officers’ failure to obtain a search warrant prior to attaching the GPS device required that any evidence obtained through the use of that device, including the testimony of the officers who observed him attack the victim, be suppressed under the exclusionary rule. The trial court denied appellant’s motion to suppress. It found that prior to placing the GPS device on employer’s van assigned to appellant, the investigating officers had already focused on appellant as the prime suspect in the recent sexual assaults on women in the region. Regarding the use of the GPS device, the trial court stated, “all it did was technologically supplement that information which the police could have obtained by their own sensory perception by actually trailing him or following him for a period of time, which they ultimately did in making the arrest in this case.”
Following his conviction, appellant petitioned this Court for an appeal. His petition for appeal contained twelve questions presented.[4] By per curiam order dated September 29, 2009, we denied nine of the questions presented, and granted the following three questions:
I. Whether the trial court erred by ruling that the warrantless, Global Positioning System (GPS) tracking of Mr. Foltz did not violate the Fourth Amendment or Article [I], Section 10 of the Virginia Constitution where the tracking was done without probable cause, without real-time police monitoring, without attempts not to track in private areas, *114 and where Mr. Foltz was tracked on private property not visible to the public.
II. Whether the trial court erred by ruling that the police’s act of physically placing of a GPS device inside the bumper of a van controlled by Mr. Foltz violated the Fourth Amendment and Article [I], Section 10 of the Virginia Constitution.
III. Whether the trial court abused its discretion by denying Mr. Foltz the right to discover the precise make and model of the GPS system used by police to track him while refusing admission of Mr. Foltz’s out-of-court GPS experiment on the grounds that Mr. Foltz failed to demonstrate that the GPS device used in the experiment was sufficiently similar to the police system.
Following the decision of a panel of this Court affirming appellant’s conviction, we ordered rehearing en banc on the issues addressed by the panel in its opinion.[5]

II. ANALYSIS

“In this case, as in all others, we seek to decide cases, ‘on the best and narrowest ground available’ from the record.” Kirby v. Commonwealth, 50 Va.App. 691, 698 n. 2, 653 S.E.2d 600, 603 n. 2 (2007) (quoting Miles v. Commonwealth, 274 Va. 1, 2, 645 S.E.2d 924, 925 (2007) (Kinser, J., concurring) (citations omitted)). This approach encourages “ ‘judicial self-restraint’ ” by avoiding the resolution of broad, reasonably debatable legal issues when narrower, less debatable legal issues fully dispose of the appeal before the court. Cooper v. Commonwealth, 54 Va.App. 558, 566, 680 S.E.2d 361, 365 (2009) (quoting Craddock v. Commonwealth, 40 Va.App. 539, 551 n. 1, 580 S.E.2d 454, 461 n. 1 (2003)).
On appeal, appellant argues that the eyewitness testimony of the police officers who observed him attack the victim must be excluded from evidence as “fruit of the poisonous *115 tree” from the unlawful use of a GPS tracking device. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).
From our review of the record on appeal, we conclude that the trial court did not err in denying appellant’s motion to suppress the eyewitness testimony of the police officers. We reach this conclusion without addressing whether the use of the GPS device, attached to employer’s van assigned to appellant, without first obtaining a search warrant, violated appellant’s rights under the Fourth Amendment of the United States Constitution and Article I, Section 10 of the Virginia Constitution.[6]
The record on appeal clearly demonstrates that the officers’ investigation of recent unsolved sexual assaults in the region pointed to appellant as the likely perpetrator of those assaults, based on the perpetrator’s unique modus operandi in those assaults and the locations where those assaults occurred. Prior to placing the GPS device on the van, the investigating officers acquired significant and reliable information that led them to focus on appellant, a registered sexual offender on probation, as the prime suspect in the recent sexual assaults. The record also reflects that prior to use of the GPS device, the investigating officers compared the modus operandi appellant used in the previous sexual assaults with the modus operandi used by the perpetrator of the recent unsolved sexual assaults in the region. Additionally, the recent assaults *116 occurred in the area where appellant lived and worked, and where he attended probation-related meetings. Based on that information, and the report of a sexual assault occurring the previous night in an area where GPS records indicated appellant’s assigned work van had been parked nearby, the officers concluded that appellant was likely the perpetrator of the sexual assaults and that he was likely to attack again. Based on those factors, the officers decided to visually follow appellant’s movements the following day.
During their visual surveillance of appellant, the officers witnessed his sexual assault on the victim. The officers were not engaged in any unlawful conduct whatsoever when they conducted a visual surveillance of appellant as he traveled in his personal truck over public roads. When they saw appellant sexually assault the victim, they quickly intervened, rescued the victim, and apprehended him.[7]
The officers’ eyewitness testimony was material, competent, and relevant to prove that appellant was guilty of abduction with intent to defile.
“As a general rule, a litigant is entitled to introduce all competent, material, and relevant evidence tending to prove or disprove any material issue raised, unless the evidence violates a specific rule of admissibility.” “Evidence is admissible if it is both relevant and material,” and it is inadmissible if it fails to satisfy either of these criteria. “Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case.” “Evidence is material if it relates to a matter properly at issue.”
Calhoun v. Commonwealth, 35 Va.App. 506, 509, 546 S.E.2d 239, 241 (2001) (quoting Peeples v. Commonwealth, 28 Va.App. 360, 365, 504 S.E.2d 870, 873 (1998) (citations omitted)).
*117 However, appellant asserts that, because information obtained from the GPS device was a factor in the police officers’ decision to personally follow him, any unlawful acts they observed him commit in their presence must be excluded as “fruit of the poisonous tree.” We disagree.
Whether evidence should be excluded as derivative of an illegal act and, therefore, suppressed under the exclusionary rule as “fruit of the poisonous tree” of that act, depends on whether “ ‘the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ ” Wong Sun, 371 U.S. at 488, 83 S.Ct. at 417 (quoting John M. Maguire, Evidence of Guilt 221 (1959)), quoted with approval in Hudson v. Michigan, 547 U.S. 586, 592, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006). The United States Supreme Court has observed that evidence is not “ ‘fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police.” Id. (emphasis added). See Hudson, 547 U.S. at 592, 126 S.Ct. at 2164 (observing that “but-for causality is only a necessary, not a sufficient, condition for suppression”). The exclusion of evidence “‘has always been our last resort, not our first impulse,’ and our precedents establish important principles that constrain application of the exclusionary rule.” Herring v. United States, 555 U.S. 135, 140, 129 S.Ct. 695, 700, 172 L.Ed.2d 496 (2009) (quoting Hudson, 547 U.S. at 591, 126 S.Ct. at 2163). Evidence is obtained by means sufficiently distinguishable to be admissible despite an illegality by the authorities if it is “evidence attributed to an independent source” or “evidence where the connection has become so attenuated as to dissipate the taint.” Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974).
Here, we hold that the exclusionary rule does not bar the eyewitness testimony of the officers who witnessed appellant sexually assault the victim. The assault the officers observed was a new and distinct offense from the previously committed crimes the officers were investigating, and sufficiently inde *118 pendent of any information obtained by them from the GPS tracking device.[8] The officers’ focus on appellant, a registered sex offender on probation, as the likely perpetrator of the recent sexual assaults did not begin with the placement of the GPS device on his assigned work van. They knew that appellant resided, worked, and attended probation-related meetings where the recent assaults occurred. They knew that the manner in which the perpetrator of the recent sexual assaults attacked those victims was “amazingly like” that appellant used in previous sexual assaults to which he had previously confessed. The additional information obtained from the GPS tracking of the van’s locations near the scene of the latest attack was just one more piece of information to add to the already strong focus on appellant as the person responsible for the assaults. The officers’ immediate concern for public safety and the urgency of apprehending the predatory sexual attacker resulted in their decision to visually follow appellant as he drove his personal vehicle along the public streets the day following the most recent sexual assault in that area. The officers’ testimony, which appellant sought to suppress, related to events they observed as they saw appellant assault the innocent victim as she walked along a public sidewalk.
We hold that the officers’ observations of that criminal act were sufficiently attenuated from any argued taint arising from the placement and use of the GPS device to track the movements of appellant’s assigned work van and that there is no basis in law to exclude the officers’ eyewitness testimony of a violent assault being committed in their presence.

*119
III. CONCLUSION

For the reasons stated herein, we hold that the trial court did not err in denying appellant’s motion to suppress the eyewitness testimony of the police officers. Accordingly, we affirm the judgment of the trial court.

Affirmed.

. When Lt. Akre related the substance of Kraut's call to a senior Fairfax County detective, the senior detective immediately knew Kraut was referring to appellant.

. Police files revealed that the offenses involving appellant in the 1986-1990 timeframe shared similar characteristics with the recently reported offenses and that after appellant was arrested in 1990, he had confessed to committing six sexual offenses, including a rape in 1986.

. The surveillance team consisted of 18 police officers in 10 unmarked vehicles.

. This appeal is governed by Rule 5A:20(c) as worded prior to its revision effective July 1, 2010, changing the requirement from setting forth "questions presented” to setting forth "assignments of error.”

. Pursuant to Rule 5A:20(e) we do not address appellant’s question presented III because appellant did not address that question presented in his brief to the en banc Court.

. At oral argument, the parties agreed that the basis for our decision today was not raised to the trial court. However, we conclude, for the reasons stated herein, that the trial court's decision to deny appellant's motion to exclude the officers’ eyewitness testimony of appellant’s attack on his victim was the correct decision.
“Failure to make the argument before the trial court is not the proper focus of the right result for the wrong reason doctrine. Consideration of the facts in the record and whether additional factual presentation is necessary to resolve the newly-advanced reason is the proper focus of the application of the doctrine.”
Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010) (quoting Perry, 280 Va. at 580, 701 S.E.2d at 436).

. Police "officers may arrest, without a warrant, any person who commits any crime in the presence of the officer....” Code § 19.2-81(B).

. Cf. United States v. Sprinkle, 106 F.3d 613 (4th Cir.1997) (affirming conviction for new, distinct crime committed by suspect’s response to an illegal stop); Testa v. Commonwealth, 55 Va.App. 275, 685 S.E.2d 213 (2009) (applying Sprinkle to affirm conviction of obstruction of justice for threatening police officer committed during allegedly unlawful entry); Brown v. City of Danville, 44 Va.App. 586, 606 S.E.2d 523 (2004) (affirming conviction where appellant engaged in a new and distinct criminal act in response to unlawful police conduct).