COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Huff, Judge Humphreys and Senior Judge Bumgardner
Argued at Salem, Virginia


HEATHER HOGSTON LAMBERT

                                                        OPINION BY
v.        Record No. 0029-15-3              CHIEF JUDGE GLEN A. HUFF
                                                    DECEMBER 22, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SCOTT COUNTY
John C. Kilgore, Judge

        David L. Scyphers (Scyphers & Austin, P.C., on brief), for
        appellant.

        Christopher P. Schandevel, Assistant Attorney General (Mark R.
        Herring, Attorney General, on brief), for appellee.


        Heather Hogston Lambert ("appellant") appeals her conviction of assault and battery, in

violation of Code § 18.2-57.  Following a bench trial in the Circuit Court of Scott County ("trial

court"), appellant was sentenced to thirty days in jail and twelve months of supervised probation.

On appeal, appellant raises two assignments of error

        1.   The [trial court] erred in convicting [appellant] of assault and
             battery given the due deference to be given to reasonable
             judgments of a teacher and the fact that assault and battery
             shall not be construed to include the use of, by any teacher
             while acting in the course and scope of her official capacity,
             incidental, minor or reasonable physical contact designed to
             maintain order and control.

        2.   The [trial court] erred in admitting evidence of a letter written
             to [appellant] pertaining to a prior incident.[1]

_____
        [1] Our ruling on the first assignment of error disposes of the appeal and, therefore, this
opinion does not address the second assignment of error.  Foltz v. Commonwealth, 58 Va. App.
107, 114, 706 S.E.2d 914, 918 (2011) ("[W]e seek to decide cases, on the best and narrowest
ground available from the record.  This approach encourages judicial self-restraint by avoiding

For the following reasons, this Court reverses appellant's conviction and remands the case for a new trial if the Commonwealth be so advised.

## I. BACKGROUND

On appeal, "we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial." Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

On January 10, 2013, eleven-year-old K.M. rode the school bus to Shoemaker Elementary School ("Shoemaker"). As a special needs student, K.M. was regularly met by teacher's aide Tina Williams ("Williams") when her bus arrived at school. On the morning of January 10, K.M. exited the bus and handed her backpack, coat, and blanket to Williams. In the process, K.M.'s coat or blanket fell and Williams retrieved it from the bus steps.

On that same morning, appellant, a preschool special education teacher for Shoemaker, was outside on bus duty when K.M.'s bus arrived. As K.M. was exiting the bus, appellant saw either K.M.'s coat or blanket "escape[] from the bus and land[] on the ground." Appellant observed Williams pick up the fallen item while K.M. was still on the bus steps. After Williams retrieved the item, K.M. handed her backpack to Williams and proceeded into the school building. At that point, appellant thought she heard Williams ask K.M. to "come back and get" her belongings. When K.M. did not turn around, appellant followed after K.M. as she entered the school. Appellant was not one of K.M.'s teachers, nor did she realize Williams worked with K.M. as a teacher's aide.

_____

the resolution of broad, reasonably debatable legal issues when narrower, less debatable legal issues fully dispose of the appeal before the court." (citations omitted)).

Several witnesses testified that they saw appellant run after K.M. in an "agitated" or "aggravated" manner. Renda Keith ("Keith"), a qualified mental health professional at Shoemaker, who worked with K.M., witnessed the events of January 10, as they occurred inside the school. Keith testified that after appellant ran into the school, appellant loudly yelled at K.M., instructing K.M. to go back outside and retrieve her backpack. K.M. refused, repeating "No" while crying. A struggle ensued in which appellant pulled K.M. outside and down the sidewalk back toward the bus.

Once outside, appellant continued to pull K.M., using the child's wrists, down the sidewalk. Appellant called for Williams to assist. Initially, Williams ignored appellant "because [Williams] thought what [appellant] was doing was wrong." Eventually, however, Williams assisted. Williams put the coat and backpack on K.M., and told K.M. "to go on in."

Stacy Wood ("Wood"), the assistant principal for Shoemaker and the trainer for Scott County on proper escorting and prompting techniques for special needs students, was qualified during trial as an expert in escorting and prompting techniques for special needs children. After watching the surveillance video of the incident for the first time while giving her testimony, Wood testified that appellant's method of pulling K.M. by the wrist was not the appropriate "handle with care" technique educators are required to use in Scott County. Specifically, Wood stated that even had K.M. sat down on the floor and refused to move, the proper way for appellant to lead would be to lift the child up under the arms and stand her up.

Over appellant's objection, the Commonwealth offered into evidence a letter dated May 17, 2012 ("School Board letter"), from the Scott County School Board ("School Board") and addressed to appellant. The letter stated in pertinent part, "please use your teaching assistants in the room when disciplining a child. You should not put your hands on a student

unless it is for instruction or for the safety of a child." The trial court overruled appellant's relevance objection, explaining

> [the letter is] very material if [appellant] had been instructed by the Scott County School Board or a supervisor that she was not to have physical contact with a child. *She wouldn't have the exception* [Code § 18.2-57(G) (exception to assault and battery for school employees)] *available to her any longer* that her physical contact with a child was appropriate if she could have none.

(Emphasis added).

At the close of the evidence, the trial court convicted appellant of assault and battery. In doing so, the trial court reasoned that the actions taken by appellant did not fall within the statutory exception, considering the dictates of the School Board. First, the trial court stated that appellant's actions were, "*definitely . . . outside the scope of employment . . .* since the prior action of the [School Board], both verbally and in writing, if not limiting her scope of employment, certainly emphasized what would be appropriate contact—physical contact between [appellant], at least, and the children under her care." (Emphasis added). Next, the trial court stated that appellant's version of the facts was not credible and that appellant was mistaken about the alleged disobedience by K.M. The trial court found that K. M. had not committed an act of disobedience, and, thus, there was "nothing to give deference to [because] there was no reasonable reason for [appellant] to be disciplining, directing, instructing [K.M.] on anything. And, even if there were, I would find that what I've viewed here would be an unreasonable response to the level of disobedience that is alleged." Consequently, the trial court concluded that the exception under Code § 18.2-57(G)(i) did not apply. This appeal followed.

## II. ANALYSIS

On appeal, appellant contends that the trial court erred in its interpretation of Code § 18.2-57(G). Specifically, appellant argues the trial court failed to properly interpret the

- 4 -

statutory exception, which exempts a teacher's "reasonable physical contact designed to maintain order and control" from the definition of assault and battery. Code § 18.2-57(G)(i).

"[A]n issue of statutory interpretation is a pure question of law which we review de novo." Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) (alteration in original) (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)). "The primary objective of statutory construction is to ascertain and give effect to legislative intent." Hines v. Commonwealth, 59 Va. App. 567, 573, 721 S.E.2d 792, 795 (2012) (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).

> When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. . . . [T]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.

Id. at 574, 721 S.E.2d at 795 (quoting Kozmina v. Commonwealth, 281 Va. 347, 349-50, 706 S.E.2d 860, 862 (2011)).

Under Code § 18.2-57(A), "simple assault and battery" is a Class 1 misdemeanor. Code § 18.2-57(G) provides an exception to this general rule in certain circumstances. In pertinent part,

> "assault and battery" shall not be construed to include the use of, by any . . . full-time or part-time employee of any public or private elementary or secondary school while *acting in the course and scope of his official capacity*, . . . (i) incidental, minor or reasonable physical contact or other actions designed to maintain order and control.

Code § 18.2-57(G) (emphasis added). "In determining whether a person was acting within the exceptions provided in this subsection, *due deference shall be given to reasonable judgments* that were made by a . . . full-time or part-time employee of any public or private elementary or secondary school at the time of the event." Id. (emphasis added). Construing a similar exception

- 5 -

in Code § 22.1-279.1,[2] the Federal District Court for the Eastern District of Virginia concluded that the language "reflects an express legislative intent to defer to teachers who are often required to make difficult and expeditious decisions." Brown v. Ramsey, 121 F. Supp. 2d 911, 913 (E.D. Va. 2000).

## A. Scope of Official Capacity

Code § 18.2-57(G)(i) provides that "(i) incidental, minor or reasonable physical contact or other actions designed to maintain order and control," if done by a school employee in his official capacity, are not assault and battery. Noting that "the prior action of the school board . . . , if not limiting her scope of employment, certainly emphasized what would be appropriate contact," the trial court ruled that appellant could not have been acting within the scope of her official capacity. Thus, the trial court found that the exception did not apply because of the limitations set by the School Board and Scott County. In effect, it substituted the School Board's and Scott County's standards of conduct for that specified by the General Assembly in the criminal statute to determine that appellant could not have been acting within her "official capacity."

---

[2] The text of Code § 22.1-279.1 (Corporal punishment prohibited) reads in pertinent part

> (A) No teacher, principal or other person employed by a school board or employed in a school operated by the Commonwealth shall subject a student to corporal punishment. This prohibition of corporal punishment shall not be deemed to prevent (i) the use of incidental, minor or reasonable physical contact or other actions designed to maintain order and control . . . .
>
> (B) In determining whether a person was acting within the exceptions provided in this section, due deference shall be given to reasonable judgments at the time of the event which were made by a teacher.

The standards selected by the General Assembly are not subject to modification by the School Board. "When the language in a statute is clear and unambiguous, we are bound by the plain meaning of that language. [The court] must determine the General Assembly's intent from the words appearing in the statute . . . ." Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001) (citations omitted).

Therefore, instructions issued by a school board to a teacher are ineffective to modify the standards set by the General Assembly for criminal culpability. See State v. Lanier, 979 So. 2d 365, 369 (Fla. Dist. Ct. App. 2008) ("While a teacher may be subject to disciplinary charges for violating the school board's employment policy, that policy does not trump the argument that certain conduct has not violated the criminal law."); see also Commonwealth v. Cnty. Bd., 217 Va. 558, 574, 232 S.E.2d 30, 40 (1977) ("School boards . . . constitute public quasi corporations that exercise *limited powers and functions* of a public nature granted to them expressly or by necessary implication, and *none other* . . . ." (emphasis added) (quoting Kellam v. School Bd., 202 Va. 252, 254, 117 S.E.2d 96, 98 (1960))). A school board has the authority to regulate actions of its teachers and to administer contractual penalties for a teacher's failure to comply, see Code §§ 22.1-28, 22.1-313, but that authority does not extend to modifying the standards established by the General Assembly in a criminal statute. See, e.g., Commonwealth v. Doe, 278 Va. 223, 228-29, 682 S.E.2d 906, 908 (2009) (holding that the courts' authority to lift a criminal statutory ban imposed on a defendant is distinct and separate from the "supervisory authority over the public schools" vested in a school board by which the school board could continue to ban the defendant from school property).

The term "official" is defined as "[o]f or relating to an office or position of trust or authority," and the term "capacity" is defined as "[t]he role in which one performs an act." Official & Capacity, Black's Law Dictionary (10th ed. 2014). In other words, the exception is

applicable to one whose conduct occurs in his "role" as an employee of the school while performing duties "of or related to [his] . . . position of . . . [such] authority." Code § 18.2-57(G); see Scope of Authority, Black's Law Dictionary (10th ed. 2014) ("[t]he range of reasonable power that an agent has been delegated or might foreseeably be delegated in carrying out the principal's business").

Therefore, the trial court should not have relied on the strictures of the School Board and Scott County to determine whether appellant was "acting in the course and scope of her official capacity." The undisputed evidence in this case established that appellant was employed and functioning as a school teacher monitoring bus activity when her interaction with K.M. occurred. Consequently, the scope of her "official capacity" was defined by her duties as a special needs school teacher, including her duty to oversee students as they arrived on the bus on January 10, 2013. In ruling that appellant was acting outside of the scope of her official capacity and therefore not entitled to the benefit of the statutory exemption, the trial court erroneously substituted the policies of the School Board and Scott County for the "official capacity" standard established by the General Assembly.

## B. Reasonable Judgments

Code § 18.2-57(G)(i) provides that in determining whether a defendant's actions fall within the exception, "due deference" is to be given to the reasonable judgments of the school employee made "at the time of the event." In the instant case, the trial court did not provide "due deference" to appellant because it found appellant was mistaken in her belief that K.M. had been disobedient. The trial court did not determine whether appellant's understanding of events was, nonetheless, reasonable, and consequently, did not apply due deference to determine whether her contact with K.M. was reasonable.

- 8 -

"The word 'reasonable,' in ordinary usage, 'means fair; just; ordinary or usual; not immoderate . . . ; not capricious or arbitrary.'" Miller v. Commonwealth, 64 Va. App. 527, 541, 769 S.E.2d 706, 712 (2015) (quoting Sydnor Pump & Well Co. v. Taylor, 201 Va. 311, 317-18, 110 S.E.2d 525, 530 (1959)). A mistake, on the other hand, is "[a]n error, misconception, or misunderstanding; an erroneous belief." Mistake, Black's Law Dictionary (10th ed. 2014). A plain reading of the exception in Code § 18.2-57(G) requires the court to determine whether a judgment, even an erroneous judgment, was reasonably made.

In the instant case, the trial court did not determine whether appellant's judgment was reasonable, stopping instead with a finding that appellant was mistaken in her perception of events. Under the plain meaning of Code § 18.2-57(G), the trial court was required to further determine whether appellant's version of the facts, i.e. that K.M. had disregarded an instruction, was nonetheless a reasonable "fair" or "just," or "not capricious or arbitrary" understanding of the events at the time. If appellant's understanding of the events was reasonable, the trial court was then required to give appellant due deference in determining whether her response was likewise reasonable. By requiring application of "due deference" to "reasonable judgments that were made . . . at the time of the events," the statute contemplates that the perspective of the school employee "at the time of the event" must be taken into consideration. Code § 18.2-57(G). Absent a determination of the reasonableness of appellant's understanding of the events, the statutory standard of due deference was not appropriately withheld. Such absence was error.

III. CONCLUSION

For the foregoing reasons, this Court reverses appellant's conviction and remands the matter to the trial court for a new trial if the Commonwealth be so advised.

Reversed and remanded.

- 9 -